UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:24-CV-117-GNS-HBB

JOHN HAMPTON PLAINTIFF

v.

MURSHAD ABDULAHI et al. DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (DN 28) and Plaintiff's Motion to Exclude Expert Testimony (DN 29). The motions are ripe for adjudication.

## I. STATEMENT OF FACTS

The basic facts of this case for the purpose of this partial summary judgment motion are straightforward and largely not in dispute. In August 2023, John Hampton ("Hampton") was asleep in the cab of his parked truck when Defendant Murshad Abdulahi ("Abdulahi"), an employee of Defendant MAH United Trucking, Inc. (collectively "Defendants"), struck Hampton's truck cab while attempting to back his own tractor trailer into a parking space. (Pl.'s Mot. Partial Summ. J. 2, DN 28); (Defs.' Resp. Pl.'s Mot. Partial Summ. J. 2, DN 36). When the trucks collided, Hampton was shaken from his bed and fell approximately 18 inches. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. 2-3). Following this accident, Hampton suffered from pain in his neck, back, shoulder, and hip, and sought medical treatment. (Pl.'s Mot. Partial Summ. J. 2). He filed a lawsuit in Simpson Circuit Court (Kentucky), which was subsequently removed to this Court on September 20, 2024. (Notice Removal 1, DN 1). Hampton was examined by two doctors, both

of whom concluded that most of his injuries and pain were caused by preexisting conditions, rather than the subject collision. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 2, at 13, DN 36-2; Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 4, at 9-12, DN 36-4). The parties entered into a joint stipulation which reads:

> Defendants were negligent with respect to the incident subject to this litigation; however, they expressly deny that their negligence was the legal cause of Plaintiff's injuries and damages and further dispute the nature, extent, and amount of those injuries and damages, which will be determined at trial.

(Joint Stipulation, DN 23). Hampton has now moved for partial summary judgment on the issue of Defendants' liability, and moved to exclude both expert reports prepared by the physicians who examined him. (Pl.'s Mot. Partial Summ. J., DN 28; Pl.'s Mot. Exclude, DN 29).

## II. <u>JURISDICTION</u>

Hampton is a citizen of Louisiana, Defendants are citizens of Minnesota, and the amount in controversy exceeds $75,000, therefore this Court has jurisdiction based on diversity, pursuant to 28 U.S.C. §§1332(a)(1), 1441, and 1446. (Compl. ¶¶ 1-3, DN 1).

## III. <u>DISCUSSION</u>

### A. <u>Motion for Partial Summary Judgment</u>

Hampton first moves for partial summary judgment on the narrow issue of liability. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After the movant shows "that there is an absence of evidence to support the nonmoving party's case," the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson*, 477 U.S. at 247-48. The

non-moving party must do this by presenting specific facts, from which the jury could reasonably find in their favor, when viewed in a light most favorable to them. *Anderson*, 477 U.S. at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

While Hampton captions his motion as a request for summary judgment on the issue of liability, it appears as though he is actually moving for summary judgment on the causation element of his negligence claim. Hampton's motion states:

> The Defendants' stipulation of negligence effectively ends the [i]nquiry concerning the causation of Mr. Hampton's damages. While they did not stipulate as to causation, that their negligence actually caused Mr. Hampton's injuries, they might as well have done so, because there is no other intervening factor or possible causation other than the accident, and none has been raised in this action by the Defendants, other than Mr. Hampton's pre-existing medical condition . . . . Therefore, Mr. Hampton is entitled to recover his reasonable damages . . . . This Court should, therefore, enter a Partial Summary Judgment adjudging that the Defendants, jointly and severally, are liable to Mr. Hampton for all of his damages arising from the accident.

(Pl.'s Mot. Partial Summ. J. 6). Hampton is asking the Court to declare summarily that all the injuries from which he allegedly now suffers, occurred during this accident and were caused by Defendants, leaving to the jury only the task of deciding how much those injuries are worth. Because there is a genuine dispute of the material facts regarding the cause of Hampton's injuries, summary judgment cannot be granted.

"Under Kentucky law, a negligence claim requires the plaintiff to establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached its duty; and (3) this breach proximately caused the plaintiff's damages." *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 685 (E.D. Ky. 2013) (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992)), *aff'd*, 579 F. App'x 372 (6th Cir. 2014). Defendants have conceded the first two elements, acknowledging that Abdulahi owed Hampton a duty while operating his truck, and the duty was breached. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. 6). This leaves the element of proximate

causation unresolved, and "[g]enerally, the existence of legal cause is a question of fact for the jury. It only becomes a question of law for the Court where the facts are undisputed and are susceptible of but one inference." *Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 872 (Ky. App. 2001) (citation omitted).

Hampton asserts that he was uniquely susceptible to injuries caused by falling out of bed due to preexisting conditions, particularly a prior surgery to his shoulder, and that the "eggshell plaintiff" rule applies so that he is entitled to recover more significant damages. (Pl.'s Mot. Partial Summ. J. 6). Kentucky courts have adopted the basic premise of the "eggshell plaintiff" rule:

> [T]he tortfeasor takes the claimant as he finds him and is entitled to neither credit nor setoff against the amount of the claimant's damages because of preexisting physical conditions which make the claimant more susceptible to injury, or to greater injury, than would have been the case with better health.

*Wemyss v. Coleman*, 729 S.W.2d 174, 178 (Ky. 1987). The fact that Defendants' negligence may have caused *increased* injury due to Hampton's preexisting physical condition, however, does not mean that *all* of Hampton's present pain and suffering was caused by the negligent act.

The eggshell plaintiff rule does not create liability for injuries already suffered. The Kentucky Supreme Court has acknowledged this nuance, stating "[a] [d]efendant must respond in damages for *such part* of the diseased condition as his negligence has caused." *Drury v. Spalding*, 812 S.W.2d 713, 715 (Ky. 1991) (quoting *Louisville & Nashville R.R. Co. v. Kerrick*, 199 S.W. 44, 46 (Ky. 1917)). If Defendants' negligence aggravated prior existing conditions, even if those conditions were unique to Hampton, they will be held liable for the aggravation they caused. *See id.* Defendants, however, cannot legally be made to pay damages for such part of the diseased condition their negligence did *not* cause.

It is Defendant's position that Hampton at most suffered only minor soft tissue injuries from this accident, and that any further pain or injury he is currently suffering from was not caused

by their negligence. In support of this position, Defendants cite two expert reports which attribute only minor injuries to the accident and conclude that those injuries should have fully healed within a few months. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 2, at 13; Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 4, at 9-12). The ultimate credibility of these physicians is for a jury to decide, but they at a minimum create an issue of fact regarding the extent to which Hampton's reported harms were caused by Defendants' negligence.

Because Defendants have admitted they were negligent, they will be held liable for the damages they caused, even if those damages are increased due to Hampton's unique susceptibility to injury. Because Hampton asks the Court to summarily decide the issue of causation, and because there are significant fact issues which preclude such a determination, his motion must be denied.

**B. Motion to Exclude Expert Testimony**

Hampton next moves to exclude, or in the alternative limit, the testimony of expert witnesses Dr. Brett A. Scott ("Dr. Scott") and Dr. Seth Rosenzweig ("Dr. Rosenzweig"). (Pl.'s Mot. Exclude, DN 29). Hampton argues that while each doctor is a licensed physician, neither has any expertise in biomechanics, and they are therefore not qualified to give testimony concerning the physical forces involved in the crash. (Pl.'s Mot. Exclude 1).

In determining the admissibility of scientific evidence, such as scientific expert testimony, the trial court performs a screening role by "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 889 (1993). In evaluating reliability, "[t]he Supreme Court in *Daubert* set out a flexible, non-definitive checklist . . . : (1) whether the expert's theory can be tested; (2) whether the theory has been subject to peer review and publication; (3) the theory's known error rate; and (4) whether the theory has been generally accepted." *Richards v. Dugger*, No. 1:18-CV-126, 2019 WL

5777368, at *1 (E.D. Tenn. Nov. 5, 2019) (citing *Daubert*, 509 U.S. at 593-94). Importantly, "the gatekeeping inquiry must be 'tied to the facts' of a particular 'case.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 591). The "relevant reliability concerns may focus upon personal knowledge or experience[,]" and not all the factors listed in *Daubert* may be pertinent to assessing the reliability of an expert's particular expertise or the subject of his testimony. *Id.* The *Daubert* analysis is performed while remembering that "rejection of expert testimony is the exception, rather than the rule . . . ." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).

Hampton first contends that the reliability of Dr. Scott's report is insufficient because "the report does not identify any scientific methodology used to reach [the] conclusions" that the injuries are attributable to a degenerative condition rather than accident trauma. (Pl.'s Mot. Exclude 6). This is, however, not entirely accurate. Dr. Scott *does* provide four references for his conclusions, in addition to his lengthy qualifications, from which much of his personal expertise is drawn. (Defs.' Resp. Pl.'s Mot. Exclude Ex. 1, DN 35-1); *see Logan v. Cooper Tire & Rubber Co.*, No. 10-3-KSF, 2011 WL 3267769, at *3 (E.D. Ky. July 29, 2011) (holding that professional training, experience in the field, and review and observation of the relevant case facts supported a finding of an expert's reliability).

Additionally, both reports provide more basis for each doctor's opinion beyond external sources. For example, both opinions rely heavily on review of Hampton's medical records, in addition to a physical examination. (Defs.' Resp. Pl.'s Mot. Exclude Ex. 2, at 1-9, DN 35-2; Defs.' Resp. Pl.'s Mot. Exclude Ex. 4, at 1-5, DN 35-4). Evaluation of medical history is a reliable methodology for the formation of an expert opinion. *See Jahn v. Equine Servs., PSC*, 233 F.3d

382, 391-92 (6th Cir. 2000). Evaluation of a patient's medical history is particularly relevant because when a controversy involves preexisting conditions as here.

Finally, Hampton questions the reliability of the American Medical Association ("AMA") newsletter as a source, however courts have before found AMA publications to be reliable when analyzing the reliability of expert reports. *See Logan*, 2011 WL 3267769, at *3 (refusing to exclude an expert report which based opinions in part on an AMA guide); *Hamilton v. Menard, Inc.*, No. 3:10 CV 1997, 2012 WL 4483897, at *12-13 (N.D. Ohio Sep. 27, 2012) (excluding an expert report in part because it failed to abide by medical guidelines published in an AMA guide). "Although an expert's opinion is not admissible if it is speculative or mere guess work, the court should admit expert testimony if it has a reasonable factual basis." *Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547, 563 (E.D. Mich. 2022) (citation omitted). Any remaining challenges go to the weight of the testimony and are for a jury to decide. *Id.* (citation omitted). The opinions of Drs. Scott and Rosenzweig have a reasonable factual basis and therefore will not be excluded on general reliability grounds.

Hampton's primary issue with the expert reports, as reiterated in his reply, is with their conclusions about the level of impact from the collision. (Pl.'s Reply Mot. Exclude 1-2, DN 39). Defendants correctly point out that in Kentucky, "a medical doctor is the only expert that can testify concerning medical causation." (Defs.' Resp. Pl.'s Mot. Exclude 6). "[A] biomechanical expert may not invade the province of a physician's *absolute authority* by conclusively opining whether the traumatic incident at issue did or did not, in fact, cause the medically diagnosed injury or condition of a particular plaintiff." *Renot v. Secura Supreme Ins. Co.*, 671 S.W.3d 282, 289 (Ky. 2023). A biomechanical expert may provide science-based data which tends to confirm or impeach a physician's opinion on medical causation, but they may not provide their own antithetical

conclusions. *Id.* There is additionally no requirement that a biomechanical expert first analyze the forces of a crash, then report the results to a medical doctor for further medical causation analysis. Because as already discussed, Defendants' experts have a reliable basis for their *medical* testimony, to the extent that they give opinions regarding whether or not the accident caused the various injuries Hampton claims he has suffered, the experts are clearly within the scope of testimony allowed from them by Kentucky law.

Furthermore, the Sixth Circuit has held that to some extent, experts may be allowed to testify outside their area of expertise. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998) (holding that when a product safety expert testified regarding accident reconstruction, among other things, only his credibility was at issue, not his qualifications to testify). In *Anderson v. Wheeler*, No. 7:17-CV-185-CHB, 2019 WL 9362630 (E.D. Ky. Aug. 2, 2019), a sister court allowed a medical doctor to testify on matters involving the direction and forces of a collision and how those forces affected the injury, despite not being a biomechanics expert. *Id.* at *1. The doctor in *Anderson* based his conclusions on a physical examination of the patient, evidence of the car crash, and his experience treating similar injuries. *Id.*

These holdings are, of course, not license for an expert in one field to give opinions regarding any other scientific or technical field, but "[Fed. R. Evid.] 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984) (citation omitted). "As a general matter, [p]hysicians and other medical professionals routinely testify as experts since their specialized knowledge generally helps the jury resolve medical issues." *Jahn*, 233 F.3d at 389 (alteration in original) (internal quotation marks omitted) (citation omitted). The medical experts in this instance may assist the jury in determining the nature of Hampton's injuries and their cause.

*See Laski v. Bellwood*, No. 96-2188, 1997 WL 764416, at *3 (6th Cir. Nov. 26, 1997) ("Although those witnesses admittedly were not experts in biomechanics or accident reconstruction, they were licensed physicians trained to recognize catalysts of physical discomfort and injury . . . . Their *opinions* that the plaintiff's condition resulted from the accident . . . clearly could shed light on a determinative issue facing the jury . . . ."). Defendants' experts should not be entirely prevented from testifying simply because part of their opinion is based on conclusions drawn from the facts outside their area of medical expertise.[1] To the extent Hampton believes that each doctor's medical opinion relies exclusively on assumptions about the crash's level of impact, Hampton may subject them to cross examination, just as the expert in *Morales*. *Morales*, 151 F.3d at 516.

Drs. Scott and Rosenzweig will, however, be prevented from giving conclusive opinions on the severity of the crash itself. While they have presented qualifications and a reliable basis for their medical opinions regarding causation, they have presented no methodology, test results, or qualifications which might form the reliable basis for a direct opinion on the forces present in this collision. *See Gecker as Tr. for Collins v. Menard, Inc.*, No. 16 CV 50153, 2019 WL 3778071, at *8 (N.D. Ill. Aug. 12, 2019) ("The traditional role of the physician is the diagnosis (identification) of injuries and their treatment, not necessarily a detailed assessment of the physical forces and motions that created injuries during a specific event." (citation omitted)). To this limited extent,

---

[1] It should be noted that the extent of testimony from both experts regarding low impact crashes is minimal. At the end of his report, Dr. Scott lists eleven conclusions, none of which state that the subjective collision was low impact. (Defs.' Resp. Pl.'s Mot. Exclude Ex. 2, at 13). Dr. Rosenzweig, in his conclusions, characterizes Hampton's fall as "low-energy." (Defs.' Resp. Pl.'s Mot. Exclude Ex. 4, at 9). It is not clear that this is anything more than a medical characterization of the injury described to Dr. Rosenzweig during his examination, but even if it is, the conclusion is based in fact. Dr. Rosenzweig reviewed Hampton's deposition and examined pictures of the bed from which he fell, where it is undisputed that the fall distance was no more than eighteen inches. (Defs.' Resp. Pl.'s Mot. Exclude Ex. 4, at 10). Dr. Rosenzweig's conclusions are certainly based in fact and could be helpful enough to a jury to clear the generous bar set by Fed. R. Evid. 702.

Hampton's motion to exclude testimony is granted. This ruling, however, will not prevent either doctor from testifying about the opinions presented in their reports, as those opinions are sufficiently within their area of expertise, are sufficiently grounded in fact, and are subject to cross examination.

## IV. CONCLUSION

For the foregoing reasons **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (DN 28) is **DENIED**, and Plaintiff's Motion to Exclude (DN 29) is **DENIED IN PART** and **GRANTED IN PART.**

**Greg N. Stivers, Judge**
**United States District Court**
November 5, 2026

cc: counsel of record